UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| PLANNED PARENTHOOD FEDERATION OF AMERICA, INC., et al., | |
| Plaintiff, | Motion to Compel Document Production Regarding Subpoena Served on the University of Texas Medical Branch in N.D. Cal. Case No. 3:16-cv-00236, and |
| vs. | |
| THE CENTER FOR MEDICAL PROGRESS, et al., | Memorandum of Points and Authorities in Support |
| Defendants. | |
| | Fed. R. Civ. P. 45(d)(2)(B)(i) |

Defendant the Center for Medical Progress ("CMP") hereby moves this Court for an order compelling Non-Party University of Texas Medical Branch ("UTMB") to produce documents responsive to CMP's subpoena issued in Case No. 3:16-cv-00236, United States District Court, Northern District of California, as captioned above.

Counsel for CMP and UTMB have been in discussion regarding UTMB's production in response to the subpoena. However, there remains outstanding disputes related to whether UTMB has improperly withheld documents based on blanket objections and whether UTMB has properly searched for and produced responsive documents. Despite admitting that they are in possession of invoices and other responsive documents, UTMB has only produced a total of seven pages of documents in response to the subpoena. UTMB failed to produce the invoices responsive to CMP's requests. UTMB failed to produce a single e-mail and other electronic documents that are responsive to CMP's requests.

UTMB admitted it did not look for e-mails in response to the subpoena. Following CMP's objections to the production set, UTMB agreed it would produce the invoices and e-mails responsive to the requests but has not done so yet.

UTMB's improper response and delay in producing the responsive documents has necessitated the Court's intervention and assistance. A deadline for filing discovery motions, set for January 14, 2019, in the underlying case pending in the Northern District of California, has

1

necessitated the filing of this motion.

CMP seeks an Order from the Court (1) declaring UTMB's objections overruled or waived, (2) compelling UTMB to meet and confer with CMP's counsel to develop a proper search term list to properly search for documents responsive to the subpoena, and (3) compelling UTMB to produce the responsive documents to CMP.

## BACKGROUND

The underlying action in the Northern District of California, from which this third-party document subpoena emanates, concerns generally whether the Defendants (CMP and various individual defendants) allegedly "smeared" (defamed) Plaintiffs Planned Parenthood Federation of America and 10 Planned Parenthood affiliates. *See generally*, Exh. 1, Docket ("Dkt.") 59, *Plaintiffs' First Amended Complaint ("FAC")*. Plaintiffs' complaint alleges 15 different claims ranging from federal Civil RICO to state claims and seeks millions of dollars in damages. *Id.* The complaint alleges Defendants wrongfully asserted the Plaintiffs were illegally selling fetal tissue for profit. *Id.* In their complaint, Plaintiffs allege that they have "never engaged in—or agreed to engage in—any unlawful or improper activity," and "Planned Parenthood affiliates who have facilitated fetal tissue donation programs have done so in full compliance with all applicable federal and state law." Exh. 1, Dkt. 59, *FAC*, at ¶¶ 45, 94. Plaintiffs allege their injuries were caused by the defendants' "fraudulent and defamatory campaign" and that "[t]his action is brought . . . to recover damages for the ongoing harm to Planned Parenthood emanating from the video smear campaign." *Id.* at ¶¶ 12, 113; *cf. id.* at ¶ 63. Plaintiffs have emphasized that most if not all of their damages ultimately spring from being "smeared" by Defendants. *Id.* at ¶ 113.

Defendants' primary defense is that their undercover investigation truthfully reported evidence showing Plaintiffs engaged in a number of illegal activities, including the trafficking in fetal body parts for a profit to organizations. Exh. 3, Answer, Aff Def. 26, 27, 28, 39, 40.

CMP issued a third-party subpoena to UTMB. Exh. 2. The document requests at issue seek information that is relevant to a *critical* factual dispute at the heart of the underlying case: whether, and the extent to which, the Plaintiffs engaged in illegal acts. Did, as the Plaintiffs allege, the Defendants engage in a "smear campaign" by falsely claiming that the Plaintiffs violated the law, when in reality the Plaintiffs have fully complied with the law? Or did the Plaintiffs actually violate the law, as the Defendants contend?

2

Substantial evidence indicates the Plaintiffs violated the law. Two congressional committees engaged in year-long investigations, and both referred various Plaintiffs for criminal prosecution, including for: (1) selling fetal tissue for profit; (2) violating HIPAA; (3) violating IRB regulations; and (4) intentionally destroying documents. *See* SELECT INVESTIGATIVE PANEL OF THE ENERGY & COMMERCE COMM., U.S. H.R., FINAL REP., 37-70, 124-33, 137-86 (2016);[1] MAJ. STAFF OF S. COMM. ON THE JUD., 114TH CONG., HUM. FETAL TISSUE RES.: CONTEXT AND CONTROVERSY 114-27, at 39-42 (Comm. Print. 2016).[2]

CMP was aware that Plaintiff Planned of the Gulf Coast ("PPGC") had a contract with UTMB, under which UTMB would receive fetal body parts from PPGC. A representative of PPGC advised CMP about the contract and further indicated her willingness to engage in negotiations for the sale of human (fetal) cadaverous tissue for profit in violation of federal law. CMP therefore knew that UTMB would have possession of responsive documents.

Discovery concerning the extent to which the Plaintiffs violated various laws in their fetal tissue procurement practices is *highly* relevant in the underlying case. The document requests at issue here are tailored precisely to uncover information about the partnership between the Plaintiffs and UTMB. If the requested discovery indicates that the Plaintiffs schemed to illegally profit from the sale of fetal tissue, or engaged in other illegal activity due to the profit incentive, then the Plaintiffs' allegation of a "smear campaign," through which CMP allegedly proximately caused extensive damages to law-abiding entities, completely falls apart. Such evidence is also relevant to impeach any Plaintiffs that falsely claimed they have fully complied with the law, and would bolster a public policy defense since the enforcement of contracts to conceal illegal activities is highly disfavored. Given the centrality of this factual dispute to this case, and the fact that the Plaintiffs seek *millions* of dollars in damages—which could potentially be trebled under RICO— the requested discovery is clearly "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

---

[1] https://archives-energycommerce.house.gov/sites/republicans.energycommerce.house.gov/files/documents/Select_Investigative_Panel_Final_Report.pdf

[2] https://www.grassley.senate.gov/sites/default/files/judiciary/upload/22920%20-%20FTR.pdf

## PROCEDURAL HISTORY

On July 20, 2017, CMP propounded a document subpoena on UTMB. Exh. 2. UTMB failed to timely respond to the subpoena. *Affidavit of Emily J. Wischnowski*, at ¶¶ 5-6. CMP, through an agent, attempted to follow-up with UTMB for months to obtain responsive documents. *Id.* CMP's counsel personally called UTMB's legal office for weeks to figure out why UTMB never responded to the subpoena. *Id.* at ¶¶ 7-10. UTMB's legal office advised CMP's counsel that they had no record of the subpoena, that they were not willing to respond to the subpoena, and that they understood if CMP needed to file a Motion to Compel. *Id.* at ¶ 10.

On November 16, 2018, CMP's counsel e-mailed and mailed a letter to the Vice-President of Legal Affairs for UTMB advising UTMB of their office's response and CMP's intention to file a Motion to Compel. *Id.* at ¶ 11. Within a few weeks, UTMB assigned the matter to Esteban Soto, UTMB's counsel. *Id.* at ¶ 13.

On December 13, 2018, almost 18 months after being served with the subpoena, UTMB sent responses to CMP stating eleven (11) categories of "general objections". *Id.* at ¶ 15. UTMB submitted further objections to each request. *Id.* UTMB produced a total of seven (7) pages of documents, but failed to produce a single invoice or e-mail. *Id.*

On December 17, 2018, CMP's counsel e-mailed Mr. Soto requesting a phone call to discuss UTMB's production. *Id.* at ¶ 16. On December 20, 2018, counsel spoke on the phone regarding UTMB's production and the failure to produce any invoices or e-mails. *Id.* at ¶ 17. Mr. Soto advised CMP's counsel that UTMB was willing to produce the invoices, but had not initially produced the invoices because UTMB was concerned that it could be seen as an admission that it was purchasing fetal tissue from PPGC. *Id.* UTMB's position was that it was purchasing "informed consents" rather than fetal tissue. *Id.* After discussion, UTMB agreed it would produce the invoices responsive to the subpoena requests. *Id.* CMP's counsel then asked why no e-mails had been produced. *Id.* Mr. Soto advised that UTMB had not looked for any e-mails. *Id.* Following the phone discussion, Mr. Soto e-mailed CMP's counsel agreeing to produce the invoices and information, including emails, related to the negotiations/invoices/the contract with Planned Parenthood. *Id.* at ¶ 19.

UTMB has not yet produced the responsive supplemental documents. *Id.* at ¶ 23. It is CMP's understanding that UTMB is still in the process of searching for the documents and has agreed to produce those documents this week. *Id.* at ¶ 22. Because the discovery motion deadline

has necessitated the filing of this motion, CMP seeks an Order from the Court requiring UTMB to produce the responsive documents, including the emails and invoices, within two weeks of the Court's Order.

Pursuant to LR7.1, counsel for CMP has conferred with UTMB's counsel regarding the timely and proper production of responsive documents and has been unable to agree about the timing and breadth of production.

## STANDARD

Under Rule 26 of the Federal Rules of Civil Procedure, the scope of civil discovery is broad: "[P]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." FED. R. CIV. P. 26(b)(1). "A subpoena [to a non-party] may command … production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(2)(A). "At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection." Fed. R. Civ. P. 45 (d)(2)(B)(i). "The court for the district where compliance is required . . . may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it." Fed. R. Civ. P. 45 (g).

## ARGUMENT

CMP's subpoena requests are highly relevant to the underlying case in the Northern District of California. UTMB has insufficiently responded, asserting eleven (11) blanket objections to the subpoena. UTMB has failed to produce a single e-mail or invoice despite CMP's requests. For these reasons, more fully discussed below, CMP is asking the Court to (1) declare UTMB's objections waived and (2) compel UTMB to properly search for and produce documents responsive to the subpoena. CMP requests that such production is made within two (2) weeks of the Court's order.

1. **CMP's Requests Are Relevant and Discoverable.**

In its subpoena, CMP generally seeks documents concerning the Plaintiffs' fetal tissue procurement programs and whether the Plaintiffs were illegally selling fetal tissue for profit (requests nos. 1-9, 14-19), documents concerning whether the Plaintiffs were illegally modifying their

5

abortion procedures to facilitate the procurement of fetal tissue (request no. 10), documents concerning CMP's Cal. Pen. Code § 633.5 defense that the Plaintiffs were committing violent felonies against born-alive infants (requests nos. 11-12, 20-22), and documents relating to the Defendants (requests nos. 23-25). The requests read as follows:

1. <u>REQUEST FOR PRODUCTION NO. 1:</u> All DOCUMENTS or electronically stored information REGARDING the costs to PLANNED PARENTHOOD of transporting, processing, preserving, engaging in quality control, and storing fetal tissue, specimens, products of conception, and/or fetal remains from January 1, 2006, through the present.

2. <u>REQUEST FOR PRODUCTION NO. 2:</u> All DOCUMENTS or electronically stored information REGARDING the costs to PLANNED PARENTHOOD in facilitating the donation of fetal tissue, specimens, products of conception, and/or fetal remains from January 1, 2006, through the present.

3. <u>REQUEST FOR PRODUCTION NO. 3:</u> All annual profit and loss statements from PLANNED PARENTHOOD from January 1, 2006, through the present.

4. <u>REQUEST FOR PRODUCTION NO. 4:</u> All DOCUMENTS or electronically stored information relating or referring to any financial transactions involving aborted fetal tissue and/or the procurement or donation of aborted fetal tissue between YOU and PLANNED PARENTHOOD.

5. <u>REQUEST FOR PRODUCTION NO. 5:</u> All contracts or agreements, whether or not executed, between YOU and PLANNED PARENTHOOD concerning fetal tissue, specimens, products of conception, and/or fetal remains from January 1, 2006, through the present.

6. <u>REQUEST FOR PRODUCTION NO. 6:</u> All DOCUMENTS or electronically stored information from January 1, 2006, through the present between YOU and PLANNED PARENTHOOD relating to orders or requests or responses to orders or requests for fetal body parts, fetal tissue, specimens, products of conception, and/or fetal remains.

7. <u>REQUEST FOR PRODUCTION NO. 7:</u> All DOCUMENTS or electronically stored information between YOU and PLANNED PARENTHOOD concerning any per specimen compensation for any fetal body parts, fetal tissue, specimens, products of conception, and/or fetal remains from January 1, 2006, to present.

8. <u>REQUEST FOR PRODUCTION NO. 8:</u> All DOCUMENTS or electronically stored information between YOU and PLANNED PARENTHOOD indicating or related to monies received in connection with transactions involving aborted fetal tissue and/or the procurement or donation of aborted fetal tissue.

9. <u>REQUEST FOR PRODUCTION NO. 9:</u> All DOCUMENTS or electronically stored information that reflect invoices, accounts payable, and/or funds sent to PLANNED

PARENTHOOD or other entities in relation to the providing of fetal tissue, specimens, products of conception, and/or fetal remains, from January 1, 2006, through the present.

10. REQUEST FOR PRODUCTION NO. 10: All DOCUMENTS or electronically stored information regarding PLANNED PARENTHOOD modifying abortion procedures in order to facilitate the donation of fetal tissue.

11. REQUEST FOR PRODUCTION NO. 11: All DOCUMENTS or electronically stored information regarding inadvertent live births at PLANNED PARENTHOOD facilities in the course of or following abortion procedures.

12. REQUEST FOR PRODUCTION NO. 12: All DOCUMENTS or electronically stored information regarding the procurement of fetal tissue from patients following inadvertent live births at PLANNED PARENTHOOD facilities in the course of, or following, abortion procedures.

13. REQUEST FOR PRODUCTION NO. 13: All DOCUMENTS or electronically stored information between YOU and PLANNED PARENTHOOD concerning fetal tissue, specimens, products of conception, and/or fetal remains.

14. REQUEST FOR PRODUCTION NO. 14: All DOCUMENTS or electronically stored information concerning any attempt by YOU to collaborate with, or be approved by, PLANNED PARENTHOOD for fetal tissue procurement.

15. REQUEST FOR PRODUCTION NO. 15: All DOCUMENTS exchanged with Planned Parenthood Federation of America regarding fetal tissue procurement.

16. REQUEST FOR PRODUCTION NO. 16: All DOCUMENTS concerning the pricing of fetal tissue transferred by, donated by, or received by, YOU involving PLANNED PARENTHOOD.

17. REQUEST FOR PRODUCTION NO. 17: All DOCUMENTS concerning the cost to YOU of obtaining fetal tissue from PLANNED PARENTHOOD.

18. REQUEST FOR PRODUCTION NO. 18: All DOCUMENTS concerning the purchase or attempted purchase from or by YOU of fetal tissue that originated with PLANNED PARENTHOOD.

19. REQUEST FOR PRODUCTION NO. 19: All DOCUMENTS that reflect accounts payable and/or funds received concerning the sale or transfer by YOU of fetal tissue that originated with PLANNED PARENTHOOD.

20. REQUEST FOR PRODUCTION NO. 20: All DOCUMENTS that reflect invoices for fetal tissue at and over 17.6 weeks gestation obtained directly or indirectly from PLANNED PARENTHOOD.

21. <u>REQUEST FOR PRODUCTION NO. 21:</u> All DOCUMENTS that reflect invoices for "complete POC" or complete fetal cadavers obtained directly or indirectly from PLANNED PARENTHOOD.

22. <u>REQUEST FOR PRODUCTION NO. 22:</u> All DOCUMENTS that reflect invoices for cardiac/heart fetal tissue or neural/brain fetal tissue obtained directly or indirectly from PLANNED PARENTHOOD.

23. <u>REQUEST FOR PRODUCTION NO. 23:</u> All DOCUMENTS concerning The Center for Medical Progress.

24. <u>REQUEST FOR PRODUCTION NO. 24:</u> All DOCUMENTS concerning David Daleiden or Robert Sarkis.

25. <u>REQUEST FOR PRODUCTION NO. 25:</u> All DOCUMENTS concerning BioMax Procurement Services.

Exh. 2.

The sought documents all relate to CMP's public statements about the Plaintiffs engaging in specific illegal activities (selling fetal tissue for profit; changing abortion procedures; procuring tissue from born alive infants), which the Plaintiffs assert proximately caused their alleged damages and whose veracity CMP asserts establishes its affirmative defenses. Given the broad scope of discovery, the requested documents and information would tend "to make more or less probable a fact that is of consequence in determining the action," *Planned Parenthood*, 2018 WL 2441518, at *6 n. 7, by testing the Plaintiffs' claim that they fully complied with all laws.

Whether the Plaintiffs did, or did not, illegally scheme to profit from fetal tissue sales, alter abortions to secure more fetal tissue, or kill infants born alive, is highly relevant to: (1) the veracity of the many assertions in the Complaint (expressly incorporated into every cause of action) that CMP falsely accused the Plaintiffs of engaging in wrongdoing; (2) defenses premised upon the illegality of the Plaintiffs' acts, such as unclean hands, public policy, and Cal. Penal Code § 633.5; and (3) the credibility of the Plaintiffs and CMP considering the many statements that CMP has made about the Plaintiffs' wrongdoing.

### 2. **UTMB's Blanket Objections are Improper.**

UTMB's response, submitted approximately 18 months after being served with the subpoena, listed eleven (11) categories of objections, including that the requests were overly broad, unduly burdensome, or not limited to seeking relevant information. Boilerplate and general objections are always improper. *See Ritacca v. Abbott Labs.*, 203 F.R.D. 332, 335, fn. 4 (N.D.Ill.

2001) ("As courts have repeatedly pointed out, blanket objections are patently improper. This fact should no longer be news to a responding party.") (citations and quotation marks omitted).

UTMB has also failed to present any valid explanation why the subpoena requests are an undue burden on UTMB. In the non-party subpoena context, "[a]n evaluation of undue burden requires the court to weigh the burden to the subpoenaed party against the value of the information to the serving party. Whether a subpoena imposes an 'undue burden' depends upon such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Travelers Indem. Co. v. Metro. Life Ins. Co.*, 228 F.R.D. 111, 113 (D. Conn. 2005) (quotation marks omitted). Also, generally to substantiate a generic burden objection, the opposing party must detail the burden "in terms of time [and] money." *In re Toys R Us-Delaware, Inc. Fair & Accurate Credit Transactions Act (FACTA) Litig.*, No. ML 08-1980 MMM (FMOx), 2010 WL 4942645, at *6 (C.D. Cal. July 29, 2010) (ordering production: "defendant acknowledges that it has not quantified its burden but argues that providing such quantification would be an additional burden that defendant would have to shoulder.") (quotation marks, brackets, and ellipses omitted); *see also Horizon Holdings, L.L.C. v. Genmar Holdings, Inc.*, 209 F.R.D. 208, 213 (D. Kan. 2002) (same).

UTMB has not provided any specific information regarding the objections it asserted or whether documents are being withheld based on the objections. To the extent UTMB is withholding documents based on its vague and unsupported objections, UTMB should be required to produce those documents or produce a privilege log if withholding based on privilege.

### 3. UTMB has Inadequately Responded to the Subpoena.

UTMB has produced a total of 7 pages of documents. UTMB has admitted that it has invoices responsive to the requests, but has not yet produced the documents to CMP. Additionally, UTMB admitted that, as of its response in December of 2018, *UTMB had not searched for e-mails responsive to the subpoena*. It is truly unfathomable that in this era of technology not a single e-mail was sent between PPGC and UTMB.

CMP has been willing to work with UTMB on its production of the documents, but UTMB's delay in producing the documents has necessitated the Court's intervention. CMP therefore seeks an Order from the Court requiring production of the responsive documents within two weeks of the Court's order.

9

## CONCLUSION

The documents sought by CMP's document subpoenas are unequivocally relevant and key to CMP's defense in the underlying litigation. UTMB has inadequately responded to the subpoena, improperly asserted blanket objections, and has failed to timely produce responsive documents. CMP seeks an Order from the Court: (1) declaring UTMB's objections overruled or waived, and (2) compelling UTMB to produce the responsive documents to CMP within a reasonable time.

By: /s/ Andrew C. Taylor, Fed Bar #1138460
Andrew C. Taylor & Associates, PLLC
6750 West Loop South, Suite 845
Bellaire, Texas 77401
(713) 861-3100

and

Matthew F. Heffron, NE Bar No. 19228
(*pending application pro hac vice*)
THOMAS MORE SOCIETY
*and* Brown & Brown, LLC
501 Scoular Building
2027 Dodge Street
Omaha, Nebraska 68102
(402) 346-5010
ATTORNEYS FOR CMP and DAVID DALEIDEN

### CERTIFICATE OF SERVICE

I certify that on January 14, 2019, a true and accurate copy of this document was emailed and mailed by First Class mail to:

Esteban S.M. Soto
Deputy Division Chief
General Litigation Division
Office of the Attorney General
300 West 15th Street
Austin, TX 78701
Esteban.Soto@oag.texas.gov

Notice of Service to parties in underlying case to be sent separately.

/s/ Andrew C. Taylor